Appellant, Mr. Jeffress for the Appellant, Ms. Dinello for the Appellate. Good morning, Your Honor. John Jeffress on behalf of Appellant John Bigley. I'd like to reserve two minutes for rebuttal. Evaluated under any standard of review, Mr. Bigley's sentence is procedurally unreasonable and the case should be remanded for a new sentence. The failure of the district court to address Mr. Bigley's sentencing manipulation argument does not satisfy the procedural reasonableness requirements that are set forth in Rita. Affirming Mr. Bigley's sentence on this inadequate record would not only be inconsistent with Rita and Gall and a very large body of post-Booker case law, but it would do significant damage to the federal sentencing process by providing district courts with exactly the wrong incentives in terms of addressing mitigating arguments from the defense and explaining their reasons to the parties, to the public, and perhaps most importantly, for the benefit of this Court, for the purpose of meaningful appellate review. The government's entire position here depends on this Court characterizing Mr. Bigley's main sentencing argument as frivolous and therefore beneath Rita's requirements. But not only was this argument non-frivolous, it was a very strong argument for a lower sentence in this case. The camera issue here was the driver of Mr. Bigley's guidelines range and, in turn, his 84-month sentence. The camera issue resulted in a three-fold increase in Mr. Bigley's guidelines range, even though 95 percent of this case is basically a mine run travel with intent case under 18 U.S.C. 2423b. Those cases generally carry a guidelines range of either 46 to 57 months or actually a lower range, if there's no two-point enhancement, of 37 to 46 months. But here it was much, much higher than that. In fact, it was the guidelines for the production of child pornography because of this camera issue. So the fact that this was Detective Palachek's idea and that Palachek pushed this idea, those are good arguments for a lower sentence in this case. What's the precedent on the question of Senate's entrapment since manipulated enhancement? Well, I mean, you know, we have two different sentencing regimes. Obviously, we have the pre-Booker sentencing regime and then we have the post-Booker sentencing regime. Forget for a moment that Booker ever even happened. Tell me what the precedent is. Well, that's going to be hard to do. Yeah. It was sort of a revolution. Forget it for a moment. Well, in that case, you know, I'm not even sure if even under that set of circumstances the government would be correct with Walz. Walz was a case where basically that, you know, they were asking the judge to acquit the defendant of the crack offense and convict and just use the lesser included, I think, is what I'm saying, the cocaine powder offense. That's a world different from what we're talking about here where this is really just an argument in mitigation. It's an argument for a lower sentence. So I'm not even sure if we were in the pre-Booker regime that Walz would have prohibited this argument in the way the government thinks it does. But certainly here, you know, I think putting Walz in this context and where we are now with sentencing after everything the Supreme Court said and Rita, Gall, Booker, you know, Kimbrough, Spears. Who is the most relevant to this out of those that you have just outlined? Give me the Supreme Court language that's most relevant to your argument here. Well, I would say the case we rely on most is Pepper just because it's so closely analogous to this case. In that case, basically the same thing happened that's playing out here, which is the government said, hey, you can't consider this post-sentencing rehabilitation argument because of the pre-Booker case law preventing that as a basis for departure. And then in Pepper, I think the Supreme Court has gotten fairly, you know, almost frustrated with the government coming back with these arguments about what judges can't consider. I don't think one time they've gone to the Supreme Court and the Supreme Court said, you're correct. Do you have a case that says that the district court, the sentencing court has to consider sentencing manipulation, sentence entrapment, whichever style you use. Do you have a case that says that is an appropriate consideration for sentencing? Well, the Tenth Circuit said that very clearly. Do you have a controlling case? From this circuit, no. I don't think this is it. This circuit and the Supreme Court are both silent on that. Is that your position? On the exact issue of sentencing entrapment, I don't think we've got cases going either way in this circuit or the Supreme Court. But I think given where we are in terms of the case law, I mean, I think it spears the court was like, you know, we've said this several, the Supreme Court said, you know, we've said this several times now. A district court can consider a very broad array of information in imposing sentences. None of those concern anything parallel to sentence entrapment, sentence manipulation, do they? I'm not sure I see the relevance of those cases to the issue before us. Well, I think they just said, look, you can consider basically everything. And so certainly sentencing entrapment. No, they didn't. Well, they said you can't consider. I'm sorry. There's a world of things that you can't consider. Well, certainly constitutionally prohibited things. Many things are constitutionally prohibited. Many other things are irrelevant. It would be hard for me to see how a sentencing entrapment, especially as it played out here, would be irrelevant to an evaluation of nature and circumstances of the offense. Certainly the fact that this was not Mr. Bigley's idea. In fact, certainly, especially, you know, you look at what they searched. He wasn't exactly pulled into it, speaking and screaming at everyone. No. He went and found a camera. Yeah. After the detective suggested it, yes. And I was, I mean, you know, it's pretty clear to me the defendant, the detective suggested it for the exact reasons why we have here. And again, the issue is not whether this ultimately would have prevailed in this court. The issue is whether he had a right to a ruling, basically, or just even, you know, an addressing of this argument so that he could bring it to this court's attention. I mean, that's the prejudice here. You know, I mean, if the district court had this in mind, I mean, just to ask rhetorically, you know, why did the district court reject this argument? We don't know. It could be many things. It could be because. But if we were to hold, or if we have held, or if the law is that you cannot depart based on the sentence entrapment theory, then it becomes, at worst, harmless here, does it not? If that were true, and that the district court could not, it's not depart, but I think it's vary. It's vary. Correct. Right. And I think if the court were to hold it cannot vary based on this argument categorically. It's a blanket prohibition for a district court to consider this. Then perhaps, yeah, it would be hard to see the prejudice. But, you know, we don't know. The whole problem here is we're just shooting in the dark. We don't know why the district court rejected this argument. It could be. But if it cannot be considered, then it doesn't matter what. If there's a blanket prohibition, I think that's fine. But just to go back, the prejudice here, of course, is we don't know. We don't know if that was it. And if that, you know, if that was it, I think if the court were to reach that, I don't think that's the big, you know, we haven't really squarely addressed that argument as briefs. And we certainly want the opportunity to say that that's, that is something the court can consider under the Supreme Court's post-Booker sentencing precedents, the manipulation. But, you know, that could be one reason why the district court did this. Another reason could be the argument that the government's made both in the district court and here about the plea agreement, barring this, barring Mr. Bigley from bringing this issue to the court's attention, which I also think is wrong. It could be because the district court relied on misrepresentations of who said what in the chats between Mr. Bigley and the detective. It could be because the district court thought there was a mandatory minimum in this case. The district court said both in the few things that he said about this case and in the written statement of reasons that there was a mandatory minimum in this case, which, of course, does not involve any mandatory minimum. So was that what the district court had in mind? Actually, his comments indicate it might have been. But you don't, we don't know. And that's, and that's the prejudice here. And that's, in Rees-Seal's case and Bigby, they say the prejudice in cases of failure to consider is depriving this court, depriving the defendant of his right to bring an appeal, which he has a right to. And depriving this court of the ability to perform meaningful appellate review because there's just not an adequate record. So I think under Rita, those, that's just clearly not permissible. This was a ruling, this was an argument that was certainly worthy of a ruling. And if the court, and no matter what that ruling was, Mr. Bigley was entitled to take an appeal and to know what the district court had said. So, and then just finally, you know, on the statement of reasons, you know, in Rees-Seal's case, we basically said where there's no statement of reasons, then the sentence is, quote, imposed in violation of law. Here, the statement of reasons had this, you know, the judge indicated that there was a mandatory minimum in the case. The judge indicated that he was granting a departure rather than doing a variance and filled out the paperwork for one instead of the other. So in some respects, really, this is worse than no statement of reasons. Because at least when there's no statement of reasons, as there was in Rees-Seal's case, you know, we have the possibility that the judge still got it right. But here we have a statement of reasons that's filled with errors. So, you know, I mean, when we take that in combination with the judge's failure to address this sentence in any meaningful way at sentencing, but especially, you know, the principal argument mitigation, we've got a situation where we just cannot have any confidence that this sentence was done properly. So. Questions? Okay, thank you. We'll hear from the government. Elizabeth Dinello for the United States. Good morning. I'd like to start with the standard of review, which should inform the court's consideration of appellant's claims here. This court consistently has held that where a defendant claims that the district court did not adequately explain the sentence, yet where the defendant has failed to raise that objection at sentencing, then the review is for plain error. What about the suggestion that there has to be an opportunity to object, as in lie? This court has never conditioned application of a plain error standard on some inquiry by the district court at the conclusion of sentencing. But an opportunity. An opportunity. Leave aside the any other words. The question is the opportunity. In this case, the judge gave the sentence and said goodbye. Good luck. Well, number one, there was nothing preventing appellant at that point from saying, excuse me, your honor, could you please explain to me what you think of the sentencing manipulation claim? So what do you think the words in opportunity in lock mean? Well, lock did not say that that was necessary. And I'd note that in other cases, in ransom, in sealed case, in activity, there was no mention of the district court giving the opportunity that the court did give in lock. And to the extent appellant is suggesting a new rule that a court must provide that opportunity, that claim is raised for the first time in the reply brief and should be rejected on that reason alone. But also, as the Third Circuit noted in Flores Mejia, parties traditionally bear the burden of noting their objections. And it's not a particularly owner's burden to impose on counsel the requirement of interrupting and asking for clarification of the district court's reasoning. Where would have been the logical place for that to have occurred of the direction? After the judge finishes talking with the parties and thanks counsel, before the judge has left the bench, for counsel to say, wait a minute, excuse me. There was nothing stopping appellant from doing that. And under this court's precedent, he therefore has to satisfy the plain error standard. It's fairly simple to identify the point at which you should object to something the judge did. But it's a little more difficult to figure out when you appropriately insert the objection to something the judge didn't do. But if the claim is that the judge erred in not adequately explaining the sentence, that was the time to do it. Certainly, there wouldn't have been a basis before the judge ruled. But at that time, if there was some flaw in the judge's reasoning or some deficiency in the judge's reasoning, then that was the time to speak up. Or, as this court has held in numerous cases, suffer the consequences of the plain error standard. What's the most near parallel case to this one where we have applied the plain error standard? Well, I'd note in cases that I have mentioned, sealed case at Higbee, ransom, Wilson, which was cited in Flores Mejia. In none of those cases was there any mention of the judge offering the opportunity to object. The court simply assumed that because there was no objection, the plain error standard applied. So your suggestion is, if I'm looking at the transcript, the district court speaks and at the end of his speaking says, good luck to you, Mr. Bigley. Is it that point somebody should have jumped up? Sure. If he wanted to preserve his objection at that time, he should have jumped up. And you don't think it's that many lawyers on both sides of the government, in other words, wise, would hesitate to jump up and interrupt the judge at that point on his way out of the room? I would think a judge would welcome the opportunity that if there were error to correct it then and there. Well, some judges might. Some judges like to be interrupted. Some don't. But if the judge makes clear that the judge is not going to entertain the objection, then the defendant has a basis to say that the objection was foreclosed. Until the defendant asks, until the defendant steps forward, there can be no assumption. Can I ask why it matters whether this is plain error or harmless error? If they had objected and it was harmless error, what's the difference? That is, if the error here is a failure, assume for the moment you lose on the merits and that there was an error and the error was the failure to respond to a non-frivolous objection. Haven't we said that because that deprives the court of appeals of any possibility of review, that's prejudicial? And so that whether it's harmless error or plain error, it doesn't really matter. Where the court has assumed prejudice, even in the plain error context, it's been the extreme situation where the court hasn't said anything to explain its sentence. The court has never suggested that a judge's failure to address a specific claim, one specific claim, also triggers that essentially presumption of prejudice that the court found in Sealed Case and Akigbe. Traditionally, the court has required that where a defendant fails to object to a judge's explanation of the sentence, that the defendant is still required to shoulder the burden under the plain error standard of showing a difference to the outcome. And so, therefore, answering your question. You don't have to respond to everyone, but what about, doesn't Locke say you have to respond to a non-frivolous? But that goes to the question whether there's error in the first place. Yeah. And under your hypothetical, you're assuming. It does. Assume that there was error. What's the difference between whether it's plain error or non-harmless error? Well, under the plain error standard, the burden is on the defendant to show that had the judge addressed the issue, that the judge would have reached a different decision. No, that's not what we've been saying. I appreciate there is an argument for that. That's what we said in CERO. But in the cases where the problem was a failure to explain, rather than a sentencing error, we've said, essentially, in sealed cases, basically per se. That is, the error is an error. It's prejudicial because we can't tell. Isn't that right? But in sealed case, the error was failure to give any explanation at all. And here we have the judge who, on the record, gives concrete reasons for imposing that 84-month sentence. Unlike in sealed case where the district court departed upward and it was impossible for the reviewing court to determine what was in the court's mind, here the judge explains what was in his mind. And so there is a basis for substantive review of the sentence, whether the sentence was substantively reasonable, unlike in sealed case, unlike in a case where it was just a black box as to what was in the district court's head. Now, if I may address, then, your hypothetical and, in particular, as you've phrased it, whether assuming that the district court did err. And I'd like to get into the issue that the district court did not err because, essentially, our argument boils down to four words in the online discussion between appellant and Detective Palachuk. I hope it's... Can I just back up for one second before we get to that? As you can see, judges like to interrupt, too. That's right. What about Akibe? Akibe... is prejudicial in itself. Unlike in Akibe, well, in Akibe, the judge gave only a generalized explanation of the sentence. It referred to the generalized harm from the health care fraud or referred to factors that weren't relevant. Here, the district judge gave specific factors that were particular to this defendant, his age, his lack of criminal history, and referred to the particular seriousness of this offense. So, unlike in Akibe, which the court has held was simply too generalized an explanation, here the court gave a specific explanation, and the court can, therefore, perform its responsibility of review. So you agree that we're not limiting ourselves, as we did in Sealed Case, without providing any explanation at all? But Akibe isn't far off. Where the judge gives only this generalized explanation, there's still no explanation at all as to why the judge departed upward against the party's advice for this particular defendant. Here, the judge departed downward, and we know why the judge did so for this particular defendant. Okay, I interrupted you. Go ahead and see if you can figure out where you were. This court has made clear that, where as here, the record shows that the defendant is predisposed to commit the offense in the way that a government agent suggests, then that argument of sentencing trapment, sentencing factor manipulation, simply is not a basis for a lesser sentence. And do you think that that's the ground on which the judge was ruling? I mean, that seems absolutely clear to you, I take it. So, therefore, it's absolutely clear to the judge. Is that right? Well, a couple answers. It's fair that that's what the judge probably was thinking, because the prosecutor argued predisposition, and the record here is so clear on predisposition. Okay, so let me, before you get to your point, if that's true, and you're completely wrong, and the judge was completely wrong, then we do have a prejudice problem here, because then the judge was probably, in your own words, acting on a misconception of the law. If the judge misapplied the law, then yes, that's a procedural error. But I'm asking you to assume for the moment you're wrong, and that post-Booker, a judge can vary downward in this circumstance. Not that the judge must, but the judge can. Just assume for the moment, because that's going to be another set of questions. Then your view is probably the judge legally erred. Right? Yes. So in that circumstance, we do have prejudice, right? I would agree with that. Okay. So then the entire case really does come down to the question, both sides' entire case comes down purely to the question whether a judge can consider sentencing entrapment post-Booker, right? Yes. And our response is that Booker did not change the case law, beginning with Walz. Walz, to start, was not tied to the guidelines. There was no discussion of the guidelines when the Court ruled. Moreover, Shepard was not a guidelines case at all. There, the district court went below the mandatory minimum based on applying sentencing entrapment, sentencing factor mutilation, and this Court held that that was an error as a matter of law. I would draw the Court's attention to Guest. Beltran is not the only case that addresses this issue post-Booker. Guest was decided the same year as Beltran, in fact, is cited in Beltran. And in that case, the Sixth Circuit reaffirmed its pre-Booker rule that sentencing entrapment, sentencing factor manipulation are not defenses or not basis for mitigation at sentencing. And the Court specifically said that the post-Booker cases of Gall and Kimbrough, it saw no reason why those cases should affect that rule. How do you reconcile Pepper? In Pepper, the Supreme Court held, as the government had argued, the United States argued in Pepper, that a defendant's post-sentencing rehabilitation was a factor that a district court could consider at resentencing because it went to a number of the 3553A factors. Now, again, assuming the plain error standard applies, Pepper did not address sentencing manipulation, sentencing factor manipulation, and it's not obvious that a government agent's suggestion of how an offense could be committed is relevant to any of the 3553A factors where the actual conduct of the offense affects the defendant's clear predisposition. I'm just, I wonder if the 3553 factors that go to things like nature and history of the offense, circumstances of the offense, that sort of thing, would that fall within the broad language that Pepper uses where it says character, conduct of the defendant, and so forth? Certainly, the nature and circumstance of the offense are enumerated factors that a district court must consider under 3553A. But Pepper does not suggest that a court of appeals may rule, as this court has done, that certain factors simply are not relevant to the history and circumstances of the offense. But on what basis? I mean, it's clear. I mean, I must say it's clear to me, first of all, if we were going your way, it would just be one more case that the Supreme Court would say, as they said in Spears, that the courts of appeals just don't get it, that Prendy, Booker, Rita, Gall, Kimbrough have changed the rules and that you can't smuggle in this dish and fight a rear guard action against the consequences of Booker. And if it's the case that notwithstanding the guidelines, judges are free, purely for policy reasons, to decide that crack is the same as powder. If it's the case, as we've said, that notwithstanding the guidelines, judges are free to take into consideration the cooperation of the defendant, even if the government doesn't think the defendant cooperated. If it's the case that they can now take into consideration rehabilitation, I just don't see a basis for, in a post-Booker world, saying that anything is off limits. And it strikes me as, at this point, in light of the Supreme Court's opinion, it would be plain error on our part to take what the government is asking here. And I must say the government is asking to get slapped yet again by the Supreme Court by asking us to do this. I'd be amazed if the Solicitor General takes the same position that the government is taking now. That doesn't mean everybody on the Court would be amazed. No, no, that's why I said I'm. That's why I'm saying I'm. But, I mean, it just seems we're past this at this point. If I may address this perhaps in a different way, and I'm not sure I'm going to satisfy your concern, Judge Garland. In the Walls line of cases, this Court, in following what it believed to be the Supreme Court's command in Russell, said that we don't think that where defendant is predisposed, that has any bearing on sentencing. And the Court didn't suggest this was a guidelines-dependent rule. It's simply that where defendant shows no hesitation in committing an offense a certain way, then the defendant's culpability should be judged in the way that he did commit the offense. And Booker doesn't change that rule. And I appreciate your concern, but our position is that unlike rehabilitation. But where we are, the reason that there is more higher sentence here is not the statute. The reason that there's a higher sentence here is the guidelines that are associated, right? Not the statute. I mean, I think it would be right to say that we can't, you know, you can't give this man a sentence under a misdemeanor statute because you think it was predisposed. But the bump here is not caused by the statute. It's caused by the guidelines, isn't it? Right. But under this Court's case law, whether it's a departure from the guidelines, whether it's a post-Booker variance from the guidelines, this Court's case law indicates that the defendant's predisposed conduct in committing the offense, even if it's suggested by a government agent, simply is not a relevant factor under 3558. Well, that's not what you said in Hines. In Hines, actually, the counsel eventually decided to put that argument in the context of guidelines. And we said that we can't do that because the guidelines bind. So Walls was eventually transmuted into a guidelines-based case by the time we got to Hines. Right. But as I've mentioned, Shepard was clearly not a guidelines case. That was a mandatory minimum case. And I believe Glover was a case where the claim was that the judge shouldn't have imposed separate concurrent sentences for the schoolyard statute violations. Again, that wasn't specifically a guidelines consideration. Those were all on the question of whether a departure was possible, right? All those cases, every one of them, necessarily because they're before Booker, were about departures, right? But, again, what the court was saying in those cases is that sensing entrapment, sensing manipulation simply is not a relevant factor. It's where the defendant is predisposed. And there's really no meaningful dispute on this record. That appellant was predisposed. Well, that seems to be an argument to be made to the district court and was made to the district court. And the district court was perfectly free to say, well, I'm persuaded that he was predisposed and that, therefore, it makes no difference to me. Let me just address that point. This court, in many of its cases, has found predisposition based on the record. And here we have a record where it was the appellant who brought the camera, the appellant. That doesn't necessarily affect that we have at times found predisposition on the record. It doesn't mean we would on this record. As far as what he came into the conversation with the appellant, he got the camera after the conversation. Right, but he showed no hesitation. How is that relevant to predisposition? Well, as this court has held, the fact that a defendant shows no hesitation, that alone destroys a sentencing entrapment claim. Here he not only failed to show any hesitation, he showed he wanted this plan to succeed. He goes looking for the camera. He finds the camera. He brings the camera. He admits he wants to use the camera. That's consistent with the entrapment working. That isn't necessarily establishing predisposition. When he says, I hope it works, he's indicating what he wants. Right. After the point at which the defense contends the sentencing entrapment has occurred. But entrapment is not established as a matter of law where a defendant is predisposed. The acts of politics that arguably constituted the sentencing entrapment were already committed by the time he did what he did about the camera, right? If I can just answer that question, in the cases where the court has rejected sentencing entrapment, sentencing manipulation, similarly it was the government agent who suggested that the offense be committed in a certain way and, in fact, insisted that the offense be committed in a certain way. Right, right. We're past that. We're not talking about predisposition. And I'm saying that we don't have a case, do we, that's really parallel to this one where we say predisposition is established on the record as a matter of law and did not need any further consideration. It's our position that predisposition was clearly established. I'm saying that's your position. I'm trying to find out why. What is it that shows predisposition as opposed to simply that he was, in fact, induced to commit the aggravating factor? Perhaps the word predisposition is a bit of a misnomer. Perhaps it's not. The standard that the court has used is not only predisposition but lack of hesitation, and there was certainly no hesitation on this record. Well, you're saying no reasonable jury could have found hesitation here? Is that your position? That is our position. It's remarkable, I think. What about the fact that the district court erred in the statement of reasons that he actually filled out? Well, again, that seems to be a new point raised in the reply brief. An appellate has never suggested that's an independent basis for reversing the district court's ruling. The errors also that are cited, none of them are of substantive importance. The district court checked the box for mandatory minimum. It never suggested there was a particular mandatory minimum. There isn't a mandatory minimum. And although the district court mixed up departure and deviation, it nonetheless explained why it was sentencing below the guidelines. And its explanation is consistent with its oral sentence, which always controls over the written reasons anyway. Well, he may have suggested that the court thought that the rules regarding departure controlled rather than the rules regarding variance. Again, if, as we have argued, the district court was not permitted to entertain or permitted to sentence, give a lesser sentence because of sentencing manipulation, it really doesn't matter what it's called. So it all depends on your being victorious in that argument. Right. And also taking into account all the elements of the plain error standard. Well, okay. We would be taking into consideration all elements of the plain error standard if we took your position that the judge probably reached this decision based on an erroneous view of the law. Right? That is, assuming that you lost, I'm not saying you will, but if you did, then, in other words, if the district court announced, if the district court had announced, I just can't take into consideration this argument at all because the court's precedents say I can't, wouldn't that be enough for plain error? Well, our position is that would be a correct statement. I'm saying if it's wrong. If the district court is wrong, that would be obvious error. And, yes, and as I've conceded, that would satisfy Pons 3 and probably 4. Okay. Further questions? Thank you. Well, Mr. Jeffress has no more time, or actually has 45 seconds. I think everything that I would say was covered during our discussion with the government, so unless there are additional questions. Okay. Thank you. Thank you.
judges: Garland, Brown, Sentelle